IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. GILMORE


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

CORY GILMORE, APPELLANT.


Filed December 16, 2025.    No. A-25-550.


Appeal from the District Court for Hall County: ANDREW C. BUTLER, Judge. Affirmed.

Mitchell C. Stehlik, of Stehlik Law Firm, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.


RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Cory Gilmore appeals from his plea-based convictions in the Hall County District Court for two counts of first degree sexual assault. He was sentenced to concurrent terms of 36 to 48 years' imprisonment. Gilmore claims that his trial counsel was ineffective in failing to take the deposition of the alleged victim and in failing to move to withdraw Gilmore's plea prior to sentencing. Gilmore also claims that the district court abused its discretion by imposing an excessive sentence. We affirm.

## II. STATEMENT OF FACTS

Gilmore was originally charged in the Hall County Court with one count of first degree sexual assault on a child. The charge stemmed from reports by three of Gilmore's daughters that he had subjected them to either sexual penetration or sexual contact. Gilmore waived the right to a preliminary hearing and he was bound over to district court. An information was filed in district

- 1 -

court charging Gilmore with first degree sexual assault on a child, first degree sexual assault, and two counts of third degree sexual assault on a child.

On February 5, 2025, a plea hearing was held and an amended information was filed, charging Gilmore with two counts of first degree sexual assault, Class II felonies. The remaining charges were dismissed. The plea agreement was recited to the court wherein Gilmore agreed to plead to the amended information, the parties agreed to jointly recommend a term of incarceration, with the "bottom number" of 20 years on each count, and recommend that both counts run concurrent to one another. The State also agreed to dismiss another district court case, and Gilmore agreed to admit to the motions for revocation in two other district court cases. At the time of sentencing, the State agreed to recommend concurrent sentences between those two cases and the present case.

At the plea hearing, Gilmore agreed that he had previously been advised of his rights, which he understood. He did not wish for the court to formally advise him of the rights that day. Gilmore affirmed that he understood the charges in the amended information and the possible penalties of 1 to 50 years' imprisonment. Gilmore pled no contest to both charges. Gilmore affirmed his understanding that by pleading no contest, he was waiving all the rights he had previously been advised of, including the right against self-incrimination. The district court asked whether Gilmore understood that the State would be presenting a factual basis, and by his plea, he was indicating that he would not contest the accuracy of that statement. Gilmore responded affirmatively. The court then asked Gilmore if his pleas had been entered freely, knowingly, intelligently, and voluntarily. Gilmore agreed. The court asked Gilmore's counsel whether discovery had been had in the matter, and counsel indicated it had. A factual basis was then provided by the State. The factual basis indicated that Gilmore had been sexually assaulting A.G. since she was approximately 14 years old; specifically, that Gilmore sexually penetrated her between January 1, 2021, and July 28, 2021. After A.G. turned 16 on July 29, the sexual assaults continued through December of 2023.

Following the recitation of the factual basis, the district court advised Gilmore that it was not required to follow the recommendations made at the time of sentencing, which Gilmore indicated he understood. The court then found that the pleas were entered freely, knowingly, intelligently, and voluntarily; the court accepted the pleas and found Gilmore guilty of the charges.

A sentencing hearing was held on June 25, 2025. The district court sentenced Gilmore to concurrent terms of 36 to 48 years' incarceration, with credit of 342 days of time served. Gilmore was also notified that he would be a lifetime registrant under the Nebraska Sex Offender Registration Act.

Gilmore appeals.

### III. ASSIGNMENTS OF ERROR

Gilmore assigns that his trial counsel was ineffective in failing to take the alleged victim's deposition and in failing to move to withdraw Gilmore's plea prior to sentencing. Gilmore also assigns that the district court abused its discretion in imposing an excessive sentence.

## IV. STANDARD OF REVIEW

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Woolridge-Jones*, 316 Neb. 500, 5 N.W.3d 426 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

### 1. EFFECTIVENESS OF TRIAL COUNSEL

Gilmore assigns, through new counsel on appeal, that his trial counsel was ineffective by failing to (1) take the deposition of the alleged victim and (2) move to withdraw Gilmore's plea prior to sentencing.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question. See *id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*. When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; but an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. See *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

### (a) Failing to Depose Alleged Victim

Gilmore assigns that his trial counsel was ineffective in failing to take the deposition of A.G. Despite his plea, Gilmore points to his statements in the presentence investigation report (PSR) and at sentencing that he was innocent. Gilmore also notes that he indicated that some of the allegations were alleged to have occurred when he was out of town. Gilmore asserts that a deposition of the alleged victim would have allowed him and his trial counsel to better investigate those claims.

Gilmore's assigned error is not sufficiently specific to preserve any alleged ineffectiveness. Gilmore only argues that a deposition of the alleged victim would have allowed him to better investigate the assault claims. However, he does not allege what the alleged victim would have said that would have put him in a better position. See, *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023) (claim of failure to depose witness insufficiently pled where defendant did not elaborate on how taking deposition would have aided his case or how not taking deposition harmed his case); *State v. Blaha, supra* (alleged failure by trial counsel to depose two witnesses to clarify their initial statements to police not sufficient to allege deficient performance where no allegations about what witnesses would have said that differed from original statements). Further, Gilmore could have presented evidence regarding his absence during some of the times the assaults allegedly occurred had he chosen to go to trial.

This claim of ineffective assistance of counsel fails.

### (b) Failing to Move to Withdraw Plea

Gilmore alleges that prior to the sentencing hearing, he notified his trial counsel that he wished to withdraw his plea. He acknowledges that the record does not include reference to his request to withdraw his plea. He again points to his statements at sentencing that he "[doesn't] feel that [he] should plead guilty or say that [he] did something that he didn't do." And in the PSR, Gilmore denied all allegations of sexually abusing his children, including the alleged victim. Gilmore argues that these statements make it "likely" that he notified his trial counsel that he wished to withdraw his plea.

The record is sufficient to refute this claim. At sentencing, trial counsel referenced Gilmore's claim of innocence, stating that Gilmore nevertheless decided to plead no contest because "he didn't want to risk going to prison for the rest of his life." The district court, in response to Gilmore's claim of innocence, responded that Gilmore elected to plead no contest as opposed to pursuing his claim of innocence through a trial. The court reminded Gilmore that he was asked at the plea hearing whether he was entering his plea freely, knowingly, intelligently, and voluntarily. Gilmore affirmed at sentencing that he made the decision on his own to accept the plea agreement. At no time did Gilmore inform the court that he wished to withdraw his plea. Gilmore cannot establish that his trial counsel was ineffective for failing to file a motion to withdraw the plea.

This claim fails.

### 2. DISTRICT COURT DID NOT IMPOSE EXCESSIVE SENTENCES

Gilmore lastly assigns the district court erred by imposing excessive sentences.

Gilmore was convicted of two Class II felonies, punishable by a minimum of 1 year and maximum of 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). He was ultimately sentenced to concurrent terms of 36 to 48 years' imprisonment, with credit for 342 days served. It is undisputed that the sentences imposed are within the statutory guidelines; we therefore review the sentences only for an abuse of discretion.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed. *State v. Rezac, supra*. In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Gilmore points to the joint recommendation of the parties that the "bottom number" on his sentence would be 20 years, although he acknowledges the district court's advisement that it was not bound by the recommendation. He argues that his willingness to enter a plea relieved the State from expending resources and the alleged victim from having to testify. He also notes that he was gainfully employed, attending college, and had tested negative for drugs on a number of occasions while on probation.

The PSR shows that Gilmore, age 39, has a high school education, is single and has two biological children. The PSR includes the victim's report that Gilmore impregnated her at age 14 as a result of rape and she had an abortion. Gilmore denied that he was the father and instead maintained that her boyfriend was the father.

Gilmore has an extensive criminal history, which began with juvenile adjudications for "uncontrollable," unlawful acts relating to drugs, first degree assault on an officer, possession of marijuana (less than 1 ounce), theft--receiving stolen property ($0-$200), and careless driving. As an adult, Gilmore has been convicted of driving under suspension (twice), possession of marijuana, possession of drug paraphernalia, disturbing the peace (amended from third degree domestic assault)(twice), domestic assault without intent causing injury, harassment and stalking, fugitive from justice, shoplifting (twice), driving during revocation (four times), theft--unlawful taking ($0-$200), deliver/possess controlled substances, driving under the influence (three times), attempted burglary, theft--receiving stolen property ($500-$1500), criminal impersonation, third degree domestic assault, DUI/refusal (twice), and numerous traffic violations.

Gilmore scored in the very high risk range to reoffend on the Level of Service/Case Management Inventory. He scored in the moderate to high-risk range on the Vermont Assessment of Sex Offender Risk assessment. On the Sex Offender Treatment Intervention and Progress Scale, Gilmore scored in the high risk range. Gilmore underwent a Sexual Risk Assessment evaluation. He was diagnosed with Alcohol Use Disorder Moderate, Stimulant Use Disorder (methamphetamine, moderate), Cannabis Use Disorder Moderate, and Major Depressive Disorder, Moderate with Anxious Distress.

At the sentencing hearing, the court indicated that it had reviewed the PSR, noted that Gilmore had a "fairly significant" criminal history, high risk scores on the evaluations, mental health issues, and showed no remorse for the trauma he has inflicted on his children. The court found that Gilmore was not a suitable candidate for probation, having failed to comply with prior terms of probation in two cases, and that incarceration was necessary for the protection of the public.

It is clear that the district court took the appropriate factors into consideration when sentencing Gilmore. We find no abuse of discretion in the sentences imposed.

## VI. CONCLUSION

Gilmore's claims of ineffective assistance of counsel are either insufficiently pled or refuted by the record. The district court did not abuse its discretion in the sentences imposed. Gilmore's convictions and sentences are affirmed.

AFFIRMED.