IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WILLIAMS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

STEVIE WILLIAMS, APPELLANT.

Filed March 10, 2026.    No. A-25-439.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

F. Matthew Aerni, of Liberty Law Group, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

PIRTLE, WELCH, and FREEMAN, Judges.

FREEMAN, Judge.

## INTRODUCTION

Stevie Williams appeals from his plea-based conviction for second degree assault and child abuse. On appeal, he contends that his trial counsel was ineffective for failing to tell him that it was unreasonable to expect his sentence be limited to time served or probation. For the reasons set forth herein, we affirm.

## BACKGROUND

In December 2024, Williams was charged in Lancaster County District Court with second degree assault, a Class IIA felony; use of a deadly weapon to commit a felony, a Class II felony; third degree domestic assault with bodily injury, a Class I misdemeanor; and child abuse, a Class I misdemeanor. Pursuant to a plea agreement, Williams pled no contest to second degree assault, a Class IIA felony, and child abuse, a Class I misdemeanor. In exchange, the State agreed to dismiss the use of a deadly weapon to commit a felony and the third degree domestic assault with

- 1 -

bodily injury charges, to refrain from filing a tampering charge, and not to seek a habitual criminal enhancement.

At the plea hearing, the district court advised Williams that a second degree assault conviction was punishable by up to 20 years' imprisonment and that a child abuse conviction was punishable by up to a year's imprisonment, $1,000 fine, or combination of those penalties. The court specifically advised that it was not required to grant probation on either charge and was not bound by any sentencing recommendations. Williams stated that he understood these advisements and the potential penalties. Williams further stated that no promises had been made to prompt his plea and that he was not subjected to any threats, promises, or other inducements. Williams confirmed that he entered his pleas freely and voluntarily and was satisfied with the performance of trial counsel.

The State provided a factual basis stating that on October 4, 2024, officers responded to a reported weapons violation involving an assault with a blunt object. Upon arrival, officers observed Williams standing over Felicia Willeford while holding a silver metal bat in a parking lot next to a camper. Willeford was on the ground holding their minor child and had an apparent head injury with active bleeding. Officers took Williams into custody at the scene.

Officers interviewed Willeford at the scene and later at the hospital. Willeford stated that she and Williams had an on and off relationship for approximately 4 years and that they shared one child. Willeford stated that Williams followed her outside the camper, accused her of cheating, and stated, "I'm going to get my bat." Williams then returned, and while Willeford was holding their child, struck her in the back of the head approximately three times with the bat. Willeford further reported that Williams may have struck her once with his hands, though she was uncertain. Three witnesses reported observing the assault.

Following the submission of the State's factual basis, Williams reiterated his no contest plea. The district court accepted the pleas as voluntarily, freely, knowingly, and intelligently made, and adjudged Williams guilty of second degree assault and child abuse. The district court ordered a presentence investigation and scheduled sentencing.

In May 2025, the district court sentenced Williams to 15 to 20 years' imprisonment on the second degree assault conviction and 1 to 1 year's imprisonment on the child abuse conviction. The court ordered that the sentences on both charges be served concurrently to each other. The court also granted Williams credit for 222 days for time served.

Williams appeals and is represented by different appellate counsel.

## ASSIGNMENT OF ERROR

Williams assigns that trial counsel was ineffective for failing to tell him that it was unreasonable to expect his sentence be limited to time served or probation.

## STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether

counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

ANALYSIS

Williams assigns that his trial counsel was ineffective for failing to tell him that it was unreasonable to expect his sentence be limited to time served or probation. He contends that had trial counsel been more candid regarding sentencing expectations, he would have likely proceeded to trial. We conclude that this claim is refuted by the record.

When a defendant's trial counsel is different from counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, or else the claim will be procedurally barred. *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025). To raise an ineffective assistance of counsel claim on direct appeal, the defendant must allege deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. See *id*.

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. The record on appeal is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient, and that this deficient performance actually prejudiced the defendant's defense. See *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025). To show deficient performance, the defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Courts give counsel's acts a strong presumption of reasonableness. See *State v. Kruger, supra*.

When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Blaha, supra.* A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either. *State v. Kruger, supra.*

A claim similar to Williams' was raised in *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). In *Rezac*, the Nebraska Supreme Court rejected the defendant's claim that trial counsel was ineffective for failing to "fully explain" the penalties for second degree murder. *Id*. at 369, 15 N.W.3d at 719-20. The Supreme Court noted that the district court informed the defendant at the plea hearing that his offense was punishable by anywhere from 20 years' imprisonment to life imprisonment and the defendant stated that he understood the potential punishment. See *id*. The defendant also stated that the court had not used any words that he could not understand, he

understood the charges and did not have any questions, he understood that the determination of an appropriate sentence was entirely up to the court within statutory limits and stated that he still wanted to plead no contest. See *id*. From these statements, the Supreme Court concluded that the record affirmatively refuted the defendant's claim and that counsel was not ineffective. See *id*.

Like the defendant in *Rezac*, Williams was advised on the record of the nature of the charges and the full range of possible penalties before entering his plea. At the outset of the plea hearing, Williams was arraigned on the amended charges of second degree assault, a Class IIA felony, punishable by up to 20 years' imprisonment and child abuse, a Class I misdemeanor, punishable by up to 1 year's imprisonment, $1,000 fine, or combination of those penalties. Williams responded affirmatively to the court's question of whether Williams understood the charges and the possible penalties. The plea hearing continued with the court advising Williams of his rights, after which the following colloquy occurred between the court and Williams:

> THE COURT: If I accept your pleas and find you guilty, in Count I you'll be found guilty of a Class II(A) Felony and Count IV you'll be convicted of a Class I Misdemeanor. That Class II(A) Felony carries with it a possible penalty of up to 20 years in prison. Do you understand that?
>
> [Williams]: Yes, ma'am.
>
> THE COURT: The Class I Misdemeanor carries with it a possible penalty of up to a year in -- a year of incarceration, up to a $1,000 fine, or any combination of the two. Do you understand that?
>
> [Williams]: Yes, ma'am.
>
> THE COURT: Do you understand that I would not be required to grant you probation as a sentence on either of these charges?
>
> [Williams]: Yes, ma'am.

Later, during the hearing, the colloquy continued:

> THE COURT: Has [your lawyer] explained to you the charges in Counts I and IV of the Information?
>
> [Williams]: Yes, ma'am.
>
> THE COURT: Do you understand that you're charged with Assault in the Second Degree and Child Abuse?
>
> [Williams]: Yes, ma'am.
>
> THE COURT: Have you told [your lawyer] everything you know about this case?
>
> [Williams]: Yes, ma'am.
>
> THE COURT: Are you aware of anything that could be helpful to you that you have not shared with her?
>
> [Williams]: No, ma'am.
>
> THE COURT: Are you satisfied with the job that she has done for you?
>
> [Williams]: Yes, ma'am.

The colloquy continued:

> THE COURT: In exchange for your pleas of no contest to the charges in Counts I and IV of the Information, have any promises been made to you other than what I have heard here in court today?
>
> [Williams]: No, ma'am.
>
> THE COURT: Has anyone made any promise to you or represented to you in any way what the actual sentences will be in this case if I accept your pleas and find you guilty?
>
> [Williams]: No, ma'am.
>
> THE COURT: Has anyone connected with law enforcement or anyone else made any threat, in any manner whatsoever, used any force, or held out any inducement or promise, other than the plea agreement that I just heard, to get you to come in here and plead no contest to these two charges?
>
> [Williams]: No, ma'am.
>
> THE COURT: Are you pleading no contest freely and voluntarily?
>
> [Williams]: Yes, ma'am.

Here, during Williams' colloquy with the district court during the plea hearing, the court clarified the nature of the crimes and the potential penalty. Later in the hearing, the court again advised Williams that he could be sentenced up to 20 years' imprisonment for second degree assault and 1 year's imprisonment for child abuse, to which Williams responded that he understood. Despite these advisements, Williams maintained his desire to waive his rights and plead no contest. As the Supreme Court held in *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013), when allegations of ineffective assistance of counsel are affirmatively refuted by a defendant's assurances to the sentencing court, there is no basis for relief.

Because the record establishes that Williams was fully advised of the possible sentencing range and the court's discretion, he cannot demonstrate prejudice arising from counsel's alleged failure to advise him regarding sentencing expectations. Accordingly, this assignment of error fails.

## CONCLUSION

Having considered and rejected Williams' claim that his trial counsel was ineffective for failing to tell him that it was unreasonable to expect his sentence be limited to time served or probation, we affirm Williams' convictions and sentences.

AFFIRMED.